UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHASE M. RIGGI, individually and by and through his Guardian ad Litem, JAMES M. RIGGI; et al., | No. 2:11-cv-00753-MCE-DAD |
| Plaintiffs, | |
| v. | MEMORANDUM AND ORDER |
| CITY OF PLACERVILLE; et al., | |
| Defendants. | |

----oo0oo----

Through this action, Plaintiffs Chase M. Riggi, Marty Hansen, Joan Beatrice, and the Estate of Linda Carol Clark (collectively, "Plaintiffs") seek to recover from Defendants, City of Placerville, Placerville Police Department, City of Placerville Policeman Nicolas Maurer, Placerville Police Chief George Nielsen, El Dorado County, El Dorado County Emergency Services District, El Dorado County Department of Mental Health,[1] and Marshall Medical Center (collectively "Defendants") for

---

[1] El Dorado County, including the El Dorado County Department of Mental Health, have since been dismissed from this action. (See Stipulation and Order [ECF No. 36].)

injuries sustained as a result of the shooting death of Ms. Clark.  Presently before the Court is Defendant El Dorado County Emergency Services District's ("the District" or "Defendant") Motion to Dismiss Plaintiffs' fifth claim for violation of 42 U.S.C. § 1983.  For the following reasons, the District's Motion is DENIED.[2]

## BACKGROUND[3]

On March 27, 2010, Ms. Clark was involuntarily detained at the El Dorado County Mental Health Facility pursuant to California Welfare & Institutions Code § 5150 because she was deemed disabled and a danger to herself.  Later that evening, Ms. Clark was taken to the Marshall Medical Center in Placerville, California, for medical evaluation and treatment. The next day, "at approximately 10:11 a.m., [Linda Clark], in her hospital gown, walked down a hallway of the Marshall Medical Center to the ambulance bay, found an unlocked, unattended ambulance with the keys in plain view, and drove said ambulance vehicle away."  (SAC ¶ 17.)  Medical Center staff called 911 to report the ambulance stolen, after which City of Placerville police pursued and eventually stopped the vehicle.  Ms. Clark refused to surrender and was subsequently shot and killed.

---

[2] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Cal. Local Rule 230(g).

[3] The following facts are derived from Plaintiffs' Second Amended Complaint.  (See Pl.'s Second Am. Compl. ["SAC"],, filed Aug. 25, 2011, [ECF No. 39].)

2

The portions of the complaint pertinent to this motion allege as follows:

> Employees of EL DORADO COUNTY EMERGENCY SERVICES DISTRICT responsible for operation of the ambulance LINDA CAROL CLARK drove from the hospital, were negligent by virtue of the fact that they left keys for the subject ambulance in open view and easily accessible by unauthorized individuals, including, but not limited to, the allegedly mentally disabled LINDA CAROL CLARK.
>
> . . .
>
> Plaintiffs are informed and believe that the violations of LINDA CAROL CLARK's constitutional rights complained of herein and the resulting death of LINDA CAROL CLARK, caused Plaintiffs' resulting injuries and damages, and were <u>caused by the customs, policies, directives, practices, acts and/or omissions of authorized policy makers of Defendant</u>[] . . . EL DORADO COUNTY EMERGENCY SERVICES DISTRICT.
>
> . . .
>
> The aforementioned acts and/or omissions of Defendants violated LINDA CAROL CLARK's civil rights and were the direct and proximate result of policies procedures practices/customs of Defendants, and each of them, as alleged herein. Such policies, procedures, and practices/customs include, but are not limited to, an ongoing pattern of deliberate indifference to the need for proper training and supervision of emergency personnel including, but not limited to, paramedic/emergency medical technicians including those employees of Defendant EL DORADO COUNTY EMERGENCY SERVICES DISTRICT <u>responsible for the security and/or lack thereof of the ambulance left unattended and with keys in open view</u> that decedent LINDA CAROL CLARK drove from MERCY MEDICAL CENTER on March 29, 2010 that proximately caused her death.
>
> . . .
>
> As a direct and proximate result of the aforementioned policies, procedures, practices/customs of said Defendants, and each of them, decedent and Plaintiffs . . . individually and as successor in interest . . . suffered injury and damages as alleged herein including, but not limited to deprivation of the parent child relationship.

(SAC ¶¶ 33(f), 35, 59-62) (emphasis added).

///

///

3

Plaintiffs assert a variety of claims against the various Defendants, only one of which, the fifth claim for violation of § 1983, is subject to this motion. The District now moves to dismiss this claim.

## STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6),[4] all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the Defendant fair notice of what the [...] claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555).

---

[4] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

4

1  "Factual allegations must be enough to raise a right to relief
2  above the speculative level."  Twombly, 550 U.S. at 555 (citing 5
3  Charles Alan Wright & Arthur R. Miller, Federal Practice and
4  Procedure § 1216 (3d ed. 2004) (stating that the pleading must
5  contain something more than "a statement of facts that merely
6  creates a suspicion [of] a legally cognizable right of
7  action.")).

8      Furthermore, "Rule 8(a)(2)...requires a 'showing,' rather
9  than a blanket assertion, of entitlement to relief."  Twombly,
10 550 U.S. at 556 n.3 (internal citations and quotations omitted).
11 Thus, "[w]ithout some factual allegation in the complaint, it is
12 hard to see how a claimant could satisfy the requirements of
13 providing not only 'fair notice' of the nature of the claim, but
14 also 'grounds' on which the claim rests."  Id. (citing 5 Charles
15 Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading
16 must contain "only enough facts to state a claim to relief that
17 is plausible on its face."  Id. at 570.  If the "Plaintiffs...
18 have not nudged their claims across the line from conceivable to
19 plausible, their complaint must be dismissed."  Id.
20 However, "[a] well-pleaded complaint may proceed even if it
21 strikes a savvy judge that actual proof of those facts is
22 improbable, and 'that a recovery is very remote and unlikely.'"
23 Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).
24 ///
25 ///
26 ///
27 ///
28 ///

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant,...undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment...." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party...carries the greatest weight." Eminence Capital, 316 F.3d at 1052 (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (internal citations and quotations omitted).

## ANALYSIS

The District contends that the court should dismiss Plaintiffs' fifth claim under 42 U.S.C. § 1983 because they have failed to point to any specific policy, or lack of training that demonstrates a deliberate indifference to Plaintiffs' constitutional interest in the parent-child relationship.
///
///
///

Moreover, the District argues that Plaintiffs have "failed to demonstrate a close relationship between the [alleged] indifference to the need for proper training and supervision of Defendant's employees and acts by police officers that ultimately deprived Plaintiffs of their claimed right of parent-child relations." (Def.'s Mot. to Dismiss, filed Sept. 2, 2011, [ECF No. 41] at 2:20-23.)

Plaintiffs counter that Defendants' failure to train its employees in appropriate safety precautions amounted to a deliberate indifference to Plaintiffs' constitutional right to a parent-child relationship. Specifically, Plaintiffs maintain that Defendants' policies constituted an ongoing custom of failing to train its employees, resulting in a deliberate indifference to Plaintiffs' constitutional rights and that those policies were the moving force behind decedent's ultimate death, and thus, the deprivation of Plaintiffs' constitutional right.

A municipality may only be liable where it individually causes a constitutional violation via "execution of a government's policy or custom, whether by its lawmakers or by those whose edicts or acts may fairly be said to represent them. Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978); Ulrich v. City & County of San Francisco, 308 F.3d 968, 984 (9th Cir. 2002). In order to survive Defendant's 12(b)(6) motion to dismiss, Plaintiff's second amended complaint must allege sufficient facts to permit the court to infer the plausibility of each of the following elements:

///
///

7

1  (1) an employee violated the Plaintiffs' constitutional rights;
2  (2) the municipality has customs or policies that amount to
3  deliberate indifference to those rights; (3) those customs or
4  policies where the moving force behind the violation of the
5  employee's constitutional rights. Gibson v. County of Washoe,
6  290 F.3d 1175, 1193-94 (9th Cir. 2002).

7  Complete inadequacy of training may amount to a policy
8  giving rise to Monell liability; however, "adequately trained
9  officers occasionally make mistakes; the fact that they do says
10 little about the training program or the legal basis for holding
11 the [municipality] liable." City of Canon v. Harris, 489 U.S.
12 378, 379 (1989). It therefore follows that a claim of inadequate
13 training is only cognizable under Section 1983 "where that city's
14 failure to train reflects deliberate indifference to the
15 constitutional rights of its inhabitants." Id. at 392. In sum,
16 "Plaintiff[s] can allege that through its omissions the
17 municipality is responsible for a constitutional violation
18 committed by one of its employees, even though the municipality's
19 policies were facially constitutional [and] the municipality did
20 not direct the employees to take the unconstitutional action," as
21 long as the court may infer that those omissions amounted to a
22 deliberate indifference to Plaintiffs' constitutional rights.
23 Gibson, 290 F.3d at 1193-94.

24 There is no dispute that Plaintiffs have stated sufficient
25 facts to plausibly establish the first element of their Section
26 1983 claim: that an employee violated the Plaintiffs'
27 constitutional rights.
28 ///

8

1  Specifically, Plaintiffs identified a particular constitutional
2  right — right to the parent-child relationship — that the
3  district plausibly deprived by leaving the ambulance unlocked,
4  with the keys in plain view.
5  (See Def.'s Mot. at 2:18-21.)
6      With regard to the second element of Plaintiffs' Section
7  1983 claim against the District, the court finds Defendant's
8  contention that "[t]here are no facts to support Plaintiffs'
9  allegation that Defendant was indifferent to the need for proper
10 training and supervision" unavailing.  (Id. at 6:25-26.)  Given
11 the allegations that Defendant's employee left an ambulance
12 unlocked, with the keys in plain view, at a hospital populated by
13 persons who are mentally ill, persons who are medicated, and
14 prisoners taken to the hospital for treatment, the court finds it
15 "plausible" that Defendant had a policy or custom of failing to
16 provide adequate training.  See Twombly, 550 U.S. at 556 n.3.
17 Moreover, such a policy plausibly amounts to a deliberate
18 indifference to the health and safety of the city's inhabitants,
19 and thus, the constitutional rights of those inhabitants.  In
20 other words, based on the employee's abject failure to prevent
21 hospital patients from absconding with the ambulance, the court
22 reasonably infers that Defendant's employees were so lacking in
23 safety training and accident prevention that it "amounted to a
24 deliberate indifference to Plaintiffs' constitutional rights."
25 ///
26 ///
27 ///
28 ///

1  Gibson, 290 F.3d at 1193-94.  Given the early stage of the
2  litigation, in which the facts[5] are not fully developed, the
3  court declines to hold that Plaintiffs' cannot plausibly show
4  that there was inadequate training amounting to a deliberate
5  indifference.
6      The third element of Plaintiffs' Section 1983 claim —
7  whether the failure to train was the "moving force" behind the
8  constitutional violation — creates the most difficult issue
9  presented by the present motion.  Indeed, Defendant's contention
10 that there is not a "close relationship between the indifference
11 to the need for proper training ... and acts by police officers
12 that ultimately deprived Plaintiffs of their claimed right of
13 parent-child relations" is well-taken.
14 ///
15 ///
16 ///

---

[5] For example, further discovery may reveal similar instances in which Defendant failed to adequately safeguard against improper use of its vehicles.  Such similar instances would certainly bolster Plaintiffs' claim that Defendants had a custom of, or consciously failed to, adequately train its employees in proper safety and accident prevention.  Indeed, absconding with an unattended ambulance is not an uncommon occurrence.  See e.g., Mark Bellinger, Man Steals Ambulance from Murfreesboro Hospital, (Jun. 20, 2011), available at http://www.newschannel5.com/story/14942133/man-steals-ambulance-from-murfreesboro-hospital; Lauren Garrison, Ambulance 'driver' just trying to go home: Vehicle stolen in New Haven, stopped in Seymour, New Haven Register (Aug. 31, 2010), http://www.nhregister.com/articles/2010/08/31/news/new_haven/doc4c7c79b309215015299729.txt.  Conversely, further discovery may reveal specific municipality policies requiring training of employees in accident prevention.  In that case, Plaintiffs' injury would be the sole result of the employee's individual negligence, and thus, the municipality would not be liable.  See City of Canton, 489 U.S. at 387 (citing Monell, 436 U.S. at 694-695) (holding that "Respondeat Superior or vicarious liability will not attach under § 1983.").

10

1  (Def.'s Opp'n at 2:20-23.)  Nevertheless, given the Court's duty
2  to draw all reasonable inferences in the light most favorable to
3  Plaintiffs, the Court finds that Plaintiffs have stated
4  sufficient facts to withstand a motion to dismiss grounded in
5  Defendant's contention that there is not a sufficiently close
6  relationship between the alleged indifference and the deprivation
7  of Plaintiffs' rights.

8      "[F]or liability to attach in this circumstance the
9  identified deficiency in a city's training program must be
10 closely related to the ultimate injury."  City of Canton,
11 489 U.S. at 931.  In other words, there must be a causal link
12 between the municipal policy or custom and the claimed
13 constitutional violation.  Id.  The "closely related" or "moving
14 force" requirement is akin to the tort law causation standard of
15 proximate cause.  See Harper v. City of Los Angeles, 533 F.3d
16 1010, 1026 (9th Cir. 2008)  "[P]roximate cause, although derived
17 from tort law, fairly describes a Plaintiffs' causation burden
18 with respect to a municipal liability claim under § 1983."
19 Cash v. County of Erie, 654 F.3d 324, 342 (2d Cir. 2011) (citing
20 Harper, 533 F.3d at 1026.)  Specifically, the court must
21 determine whether the constitutional deprivation was a
22 foreseeable result of the alleged inadequate training.  Cf.
23 Arnold v. International Business Machines Corp., 637 F.2d 1350,
24 1355 (9th Cir. 1981) (explaining that causation in the context of
25 certain Section 1983 cases "closely resembles the standard
26 'foreseeability' formulation of proximate cause.")
27 ///
28 ///

11

In this case, at this stage of the litigation, the court cannot conclusively accept that Defendant's policy or custom — or lack thereof — was not the moving force behind the deprivation of Plaintiffs' constitutional right to a parent-child relationship; that is, the death of Linda Carol Clark. Specifically, based on the facts alleged, the Court can reasonably infer that, had the district adequately trained its employees to protect ambulances from unwarranted entry, Plaintiffs would not have been able to access and abscond with the ambulance. Thus, police intervention would have never been warranted. This notion is compounded by the fact that, <u>as alleged</u>,[6] the ambulance was left unlocked, unattended, and with the keys in plain view, in an area occupied by persons that were either mentally ill, heavily medicated, or criminals present for treatment.

The Court acknowledges that a police shooting is not necessarily the specific manner, or the specific type, of harm that would naturally flow from Defendant's conduct; that would most likely be a traffic accident injuring another driver or a pedestrian. However, that analysis is mitigated by the circumstances of this case. That is, it is foreseeable that a mentally ill person or a prisoner being treated at the hospital would abduct an ambulance left unattended and completely accessible, thereby necessitating police intervention.

---

[6] The Court notes that further factual development is warranted in this regard as well. Specifically, the nature of the hospital and its patrons is relevant to whether it was foreseeable that, by leaving the ambulance unattended and easily accessible, a person would steal the vehicle and, in turn, invoke police intervention.

1  It is also foreseeable that such police intervention would result
2  in a conflict that commands the use of violent force.  Based on
3  the foregoing, the Court declines to hold that, based on the
4  facts alleged, Plaintiffs have failed to show that the alleged
5  custom or policy is not sufficiently related to the underlying
6  constitutional violation to meet the "moving force" standard for
7  Section 1983 liability.

8  The Court therefore finds that, at this stage of the
9  litigation, absent a more fully developed factual predicate, and
10 where the Court must draw all reasonable inferences in favor of
11 the non-moving party, Plaintiffs have stated a plausible claim
12 against Defendant under Section 1983.  Therefore, Defendant's
13 motion to dismiss Plaintiffs' 42 U.S.C. § 1983 claim is DENIED.

**CONCLUSION**

For the reasons just stated, the District's Motion to
Dismiss (ECF No. 41) is DENIED.

IT IS SO ORDERED.

Dated: December 16, 2011

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

13